FILED
2008 Dec-30  PM 03:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **LONDA MURRAY O/B/O A.I.A.,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | Civil Action Number |
| **JO ANNE B. BARNHART,** | ) | **2:08-cv-852-UWC** |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This Court finds the Administrative Law Judge's ("ALJ") decision, which has become the decision of the Commissioner, is not supported by substantial evidence. Therefore, for the reasons elaborated herein, the Court will **REVERSE AND REMAND** the decision denying benefits.

## I.  Procedural History

Plaintiff filed an application for supplemental security disability on behalf of

her daughter A.I.A. in October 2004, alleging an onset date that same month.  (R. 31.)

This application was denied administratively at the initial and reconsideration stages.

Plaintiff requested a hearing before an ALJ, which was held on September 1, 2005,

in Birmingham, Alabama.  (R. 31.)  Plaintiff was not represented by counsel.  The

ALJ denied the claim, but the Appeals Council remanded the case directing the ALJ

to hold a new hearing.  A different ALJ held a hearing on July 17, 2007, at which

Plaintiff was represented by counsel.  The second ALJ also denied the claim.  (R. 16-

30.)  This denial became the final decision of the Commissioner of the SSA when the

Appeals Council refused to grant review on March 14, 2008.  (R. 7.)  When

considering the Plaintiffs' request for review, the Appeals Council considered

additional evidence offered by Plaintiff's representative, including a July 24, 2007,

letter written by A.I.A.'s treating physician, Theresa J. Bolus, M.D.[1]  (R. 10.)  Having

timely pursued and exhausted her administrative remedies, Plaintiff filed an action

for judicial review in Federal District Court pursuant to section 1631 of the Social

Security Act, 42 U.S.C. § 1383(c)(3).

---

[1] In her brief, Plaintiff indicates that the Dr. Bolus letter was not entered into the record when submitted shortly after the ALJ's decision.  Inasmuch as the Appeals Council's denial letter lists the Dr. Bolus letter as additional evidence, there is no indication that the SSA failed to consider the letter in its review.  (*See* R. 10.)

## II.  Factual Background

At the time of the hearing, A.I.A. was three years and three months old.  She was not attended day care or school.  A.I.A. suffers from severe eczema and she has an allergy to dust mites and eggs.

In the disability application, Plaintiff indicated that A.I.A. engages in "everyday activities, but while doing everyday activities she is constantly scratching. . . . While she sleeps, she scratches her face, arms, and legs . . . .   Sometimes she scratches her skin off until she bleeds."  (R. 63.)

Dr. Theresa Bolus has been A.I.A.'s treating physician since January 2004 when she was just a few weeks old, at which time she suffered from rashes.  (R. 79.) She returned the following month on February 23, 2004, at which time Plaintiff reported A.I.A.'s pain level was 1 out of 5.  Plaintiff complained that A.I.A. had suffered a facial rash, with erythematous [2] and scaling for the past two weeks.  Dr. Bolus diagnosed A.I.A. with acute dermatitis and prescribed a topical steroid cream. (R. 78.)

Less than one month later, on March 15, Dr. Bolus was concerned with the worsening facial skin rash, satellite lesions and diaper rash.  She diagnosed A.I.A. with thrush and a candidal rash.  (R. 77.)   Two months later, on May 18, A.I.A.'s

---

[2]  Erythematous is redness of the skin.

3

eczema was improving, but she still had a lichenified skin rash on her arms and face.
[3] (R. 76.) Plaintiff took A.I.A. to the emergency room on July 1, 2004, complaining that A.I.A. had been crying off and on for hours and she would not eat. The records indicate her pain level was at 5 our of 5.  On examination her eyes were red, her skin was warm and the skin on her arms was inflamed, tender and swollen.  She had lichenified skin and hyper pigmentation.  She was treated for an infection on her arms.  (R.96-104.)

Later that month, when she returned to see Dr. Bolus, A.I.A.'s condition had worsened.  Her skin was warm, with excoriated lichenified skin lesions.  Dr. Bolus prescribed an antibiotic, as well as skin medications and recommended that Plaintiff take A.I.A. to see a dermatologist if the condition did not improve.  (R. 75.)

Several weeks later, on August 13, her condition had markedly improved, with less infection and she was not itching at night.  Her appetite had improved and her pain level was rated 1 out of 5.  (R. 75)

Two months later on October15, 2004, A.I.A. returned to Dr. Bolus.  A.I.A.'s

---

[3] "Lichenified skin is the medical term for a leather- or bark-like thickening of the outermost layer of skin cells (the epidermis) as a result of long-term scratching or rubbing of itching lesions."  http://www.encyclopedia.com/doc/1G2-3447200068.html (citing Frey, Rebecca, *Gale Encyclopedia of Children's Health: Infancy Through Adolescence*, 2006).

skin was warm and dry, with lichenified skin on her arms and face.  (R. 73.)  A.I.A.

returned on January 25, 2005, at which time her rash had improved, but she still had

thickened skin on her lower legs.  She was continued on topical cortisone creams and

anti-itch medications.  (R. 132.)

On March 21, 2005, she was seen in the University of Alabama at Birmingham

Hospital ("UAB") dermatology clinic.  (R. 93-94.)  Plaintiff reported A.I.A. had

eczema off and on and scratched very hard.  The condition was better with Elidel (a

topical steroid cream) and the anti-itch medication.  On examination, Dr. Amy Theos

noted hyper pigmentation, scaly lichenified plaques [4] on  A.I.A.'s cheeks, elbows,

knees and lower extremities.  She was diagnosed with impetigo (a skin infection). (R.

94.)

Two months later, on May 23, 2005, her skin was much improved since the last

visit.  While Dr. Theos noted a 0 on the pain scale, she also noted that A.I.A. had

scalp scaling, crusted papules, [5] plaques on face, hyper pigmentation on face, knees,

and lichenified skin.  She diagnosed A.I.A. with acute dermatitis.  (R. 91-92.)

Three months later, on August 23, she returned to see Dr. Bolus.  The records

---

[4] "Plaques are palpable lesions of greater than 10 mm in diameter that are elevated above the surface."  http://www.merck.com/mmpe/sec10/ch109/ch109b.html.

[5] "Papules are elevated lesions usually less than 10 mm in diameter that can be felt or palpated"  http://www.merck.com/mmpe/sec10/ch109/ch109b.html.

show pain reported at level 2 of 5.  However, she was alert and playful.  She still had warm skin, with a dry scaly rash on her extremities.  Dr. Bolus diagnosed A.I.A. with a skin infection prescribed antibiotics, along with her eczema medications.  (R. 131.)

The following month she returned to the emergency room, at which time Plaintiff complained that A.I.A. was eating very little.  However, the records indicate Plaintiff left the emergency room without explanation.  (R. 152-3.)

Two months later, in November 2005, she returned to Dr. Bolus.  Plaintiff complained that A.I.A. had bumps on her face and infection on her elbows and knees.  Upon examination, Dr. Bolus noted dome shaped pustules [6] on A.I.A.'s face.  She also had scaly lesions on her knees and elbows.  Dr. Bolus diagnosed mollescum contagiosum, impetigo and eczema.  She prescribed an antibiotic and referral back to the dermatology clinic.  (R. 129.)

Four months later, on March 22, 2006, A.I.A. returned to Dr. Theos at the dermatology clinic, who described A.I.A. as having acute dermatitis.  Dr. Theos noted A.I.A. had lichenified plaques with excoriations.  She also had red bumps on her cheeks.  She was prescribed Atarax, an antihistamine. (R. 149.)

Three months later on June, 16 she returned to her treating pediatrician with

---

[6] "Pustules are elevated lesions that contain pus. Pustules are common in bacterial infections . . . ."  http://www.merck.com/mmpe/sec10/ch109/ch109b.html.

a nasal infection.  Dr. Bolus noted "marked improvement" of the eczema: A.I.A. had a "better skin rash than in past."  (R. 134-5.)

Approximately six months later, on January 18, 2007, she saw Dr. Bolus, at which time she had a lichenified rash on her legs and chest, but her face was improved.  She was treated again with a antihistamine, as well as a cortisone cream and referred for allergy testing.  (R. 136.)

The following month, she visited the Allergy clinic at UAB where she was treated by Dr. Coralie Hains.  (R. 163- 73.)  Upon examination, A.I.A. had a "mild eczematous rash on her face, legs, and abdomen," as well as hyper pigmentation and hyperkeratosis pilaris.[7]  Her skin was moderately dry with no acute distress.  Skin prick testing revealed an allergy to dust mites and eggs. Dr. Hains diagnosed A.I.A. with chronic eczema and recommended dust mite avoidance and continuance on the medications.

On May 11, 2007, Plaintiff sought treatment for A.I.A. who had itching, along with pus and drainage for two days.  Plaintiff reported A.I.A.'s pain level at level 1 out of 5 and she was eating well, drinking well, sleeping well and engaging in normal activities.  Dr. Bolus performed an incision and drainage for an abscess infection,

---

[7] Hyperkeratosis pilaris is a condition that presents as numerous rough red or tan bumps.

7

prescribed an antibiotic and advised Plaintiff to take MRSA staph infection precautions.  (R. 160.)

Plaintiff returned to the allergy clinic three months later on May 16, 2007, at which time she was doing great, with some itching when playing outdoors.  She had mild eczema, especially on her arms and legs.   (R. 156-8.)

Two months later, on July 24, 2007, Dr. Bolus completed a form in which she opined that A.I.A. met the listing 108.05 for Childhood Skin Disorders: A.I.A. "[h]as had the diagnosis of severe eczema since 5/18/04 requiring specialized infant formulas, topical creams, oral antibiotics and dermatology specialists consultations. Also she has suffered from secondary bacterial and fungal infections because of this extensive dermatitis."  (R. 180.)

At the administrative hearing, Plaintiff testified that A.I.A.'s treatments make her better for a couple of months at a time, but the conditions return.  Sometimes, A.I.A. scratches so much she causes open sores.  Indeed, she sometimes has blood on the sheets from scratching. (R. 209 - 10, 212-13, 220.)

After the administrative hearing, the ALJ found that A.I.A. suffers from the severe impairment of eczema, but that the impairment doe not meet or equal Listing 108.00. (R. 19.)   The ALJ found that Plaintiff's testimony regarding intensity, persistence and the limiting effects of A.I.A.'s condition were not entirely credible.

8

The ALJ based this finding on Plaintiff's reports that A.I.A. engages in normal activities, her treatment records purportedly showed she frequently had a mild rash and/or eczema and a non-examining medical opinion regarding A.I.A.'s condition. The ALJ also noted that A.I.A. had no hospitalizations for her condition. Finally, he concluded that her flare ups were intermittent and her records did not support a finding of severe lesions, present despite treatment. With respect to the domains sometimes used in the evaluation of childhood conditions, he found that A.I.A. only suffered from a less than marked limitation in her health and physical well-being.

### III.  Controlling Legal Principles

A disability claimant has a heavy, but not insuperable, burden to establish entitlement to benefits. *Mims v. Califano*, 581 F.2d 1211, 1213 (5th Cir. 1978). The district court's standard or scope of review is limited to determining whether the substantial evidence support's the Commissioner's decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Additionally, the Court must determine whether proper legal standards were applied. *Lewis v. Callahan*, 125 F. 3d 1436, 1439 (11th Cir. 1997) (citing *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987)).

Substantial evidence is more than a scintilla, but less than a preponderance. It is such evidence a reasonable mind would accept as adequate to support a conclusion. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Bloodsworth v.*

*Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). In contrast, the Commissioner's legal conclusions are more closely scrutinized. "The [Commissioner's] failure to apply the correct law or to provide the reviewing Court with the sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 969 F.2d 1143, 1145-45 (11th Cir. 1991).

Applicable agency regulations require a sequential evaluation of child disability claims. The first step involves determining whether the child is engaged in substantial gainful activity. If not, then the second step involves determining whether the child's condition is severe. If the condition is severe, the third and final step involves determining whether the impairment is disabling. A claimant may establish that her condition is disabling by showing that her impairment meets or medically equals a listing. Listing 108.5 is the listing for Dermatitis:

> *Dermatitis* (for example, psoriasis, dyshidrosis, atopic dermatitis, exfoliative dermatitis, allergic contact dermatitis), with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed.

The regulations go on to explain in Section 108:

> A. What skin disorders do we evaluate with these listings? We use these listings to evaluate skin disorders that may result from hereditary, congenital, or acquired pathological processes. The kinds of impairments covered by these listings are: Ichthyosis, bullous diseases, chronic infections of the skin or mucous membranes, dermatitis, hidradenitis suppurativa, genetic photosensitivity disorders, and burns.

. . . .

C. How do we assess the severity of your skin disorder(s)? We generally base our assessment of severity on the extent of your skin lesions, the frequency of flareups of your skin lesions, how your symptoms (including pain) limit you, the extent of your treatment, and how your treatment affects you.

    1. Extensive skin lesions. <u>Extensive skin lesions are those that involve multiple body sites</u> or critical body areas, <u>and result in a very serious limitation</u>. Examples of extensive skin lesions that result in a very serious limitation include but are not limited to:

        a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.

        b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.

        c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

    2. Frequency of flareups. <u>If you have skin lesions, but they do not meet the requirements of any of the listings in this body system, you may still have an impairment</u> that prevents you from doing any gainful activity <u>when we consider your condition over time, especially if your flareups result in extensive skin lesions</u>, as defined in C1 of this section. Therefore, if you have frequent flareups, we may find that your impairment(s) is medically equal to one

of these listings even though you have some periods during which your condition is in remission. We will consider how frequent and serious your flareups are, how quickly they resolve, and how you function between flareups to determine whether you have been unable to do any gainful activity for a continuous period of at least 12 months or can be expected to be unable to do any gainful activity for a continuous period of at least 12 months. We will also consider the frequency of your flareups when we determine whether you have a severe impairment and when we need to assess your residual functional capacity.

3. Symptoms (including pain). Symptoms (including pain) may be important factors contributing to the severity of your skin disorder(s).

20 C.F.R. Pt. 404, Subpt. P., App. 1 (emphasis supplied).

If a listing is not met, a claimant may establish that her condition "medically equals" a listing if she can establish that her impairment is "at least of equal medical significance." 20 C.F.R. § 416.926.

If the claimant cannot establish "equal medical significance," she may attempt to establish "functional equivalence" by showing that the impairment results in "marked" limitations in two of six domains of functioning or "extreme" limitations in one of six domain domains of functioning:

1) acquiring and using information,

2) attending and completing tasks,

3) interacting and relating to others,

4) moving about and manipulating objects,

5) caring for oneself, and

6) health and physical well-being.

20 C.F.R. § 416.926a.

A "marked" impairment seriously interferes with the child's ability to initiate, sustain, or complete activities. Day-to-day functioning may be seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2).

## IV. Analysis

This Court must reverse the Commissioner's because the SSA ignored substantial evidence and improperly ignored evidence from A.I.A.'s treating physician.

Although A.I.A.'s allergy doctor noted "mild" eczema in January and February of 2007, prior to that time, A.I.A.'s records show frequently reoccurring skin lesions and skin infections. Indeed, the records establish that these impairments last for months at a time, then seem to improve a couple of months, then reoccur. By

13

February and March of 2005, just a few months after birth, A.I.A. was diagnosed by her treating physician Dr. Bolus, with acute eczema/dermatitis ("hereinafter eczema"), had skin lesions and was suffering from a skin infection. (R. 78-79.)  While she was "doing well" in May, she still had a lichenified skin rash on her arms and face.  (R. 76.)  A few months later, in July 2005, A.I.A. was treated in the emergency room for a skin infection and her pain level rated at 5 out of 5.  (R. 96-104.)  Later that month, she returned to Dr. Bolus who noted that A.I.A.'s condition worsened: she had excoriated lichenified skin lesions and was prescribed antibiotics. (R. 75.)  The following month, August 2005, though improved, A.I.A. still had a skin infection. (R. 75.)  Two months later, she still had lichenified skin on her arms and face.  (R. 75.)  Although she was much improved by January 2005, just a few months later Dr. Theos, a dermatologist at UAB diagnosed A.I.A. with a skin infection and noted scaly lichenified plaques and other related conditions.  (R. 93-94.)  By May, she was much improved, but still had crusted papules and plaques on her face.  (R. 91-92.)  Dr. Bolus diagnosed acute eczema.  In August of that same year, she had another skin infection.  (R. 131.)  By November, A.I.A. returned with pustules on her face, scaly lesions on her knees and elbows, as well as impetigo (a skin infection). (R. 129.)  At this point, Dr. Bolus recommended A.I.A. return to the dermatology clinic.

When A.I.A. returned to the dermatology clinic in March of 2006, she had

lichenified plaques with excoriations.  (R. 149.)  By June her skin rash was better and she showed "marked improvement."  (R. 134-5.)  Approximately six months later on January 18, 2007, she still had a lichenified rash on her legs and chest, but her face was improved.  She was then referred for allergy testing.  (R. 136.)  By the time A.I.A. say Dr. Hains, the allergist, the eczema was described as "mild" for the first time.  (R. 163-73.)

Even when A.I.A. was not suffering from an <u>active infection</u>, <u>excoriations</u>, and <u>lesions</u> (e.g., papules, pustules and plaques), she frequently suffered from lichenified skin.  According to one source:

> [Lichenified lesions of AD [atopic dermatitis] are accompanied by intense pruritus, which is the medical term for itching. Children with atopic dermatitis often have a lowered threshold of sensitivity to itching, which means that they feel itching sensations more intensely than children without the disorder. The pruritus often creates a vicious cycle of itching and scratching, which leads to more widespread rash, which leads to more itching. The child may scratch the affected skin only intermittently during the day, however. It is common for children with AD to do more scratching in the early evening and at night; moreover, disruptions of normal sleep patterns are common in these children.

http://www.encyclopedia.com/doc/1G2-3447200068.html (citing Frey, Rebecca, *Gale Encyclopedia of Children's Health: Infancy Through Adolescence*, 2006).

These symptoms are completely consistent with reports from A.I.A.'s mother.

Not only did the SSA ignore the medical records regarding the infections and

lesions, the SSA failed to give proper weight to the opinion of the pediatrician who has treated A.I.A. since birth.  Dr. Bolus opined that A.I.A. "[h]as had the diagnosis of severe eczema since 5/18/04 requiring specialized infant formulas, topical creams, oral antibiotics and dermatology specialists consultations.  Also she has suffered from secondary bacterial and fungal infections because of this extensive dermatitis."  (R. 180.)  Dr. Bolus' opinion is fully supported by the record.

Given this evidence, A.I.A. meets Listing 108.5 for Dermatitis:

*Dermatitis* (for example, psoriasis, dyshidrosis, atopic dermatitis, exfoliative dermatitis, allergic contact dermatitis), with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed.

. . . .

Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation. . . .

If you have skin lesions, but they do not meet the requirements of any of the listings in this body system, you may still have an impairment . . . when we consider your condition over time, especially if your flareups result in extensive skin lesions. . . .

Symptoms (including pain) may be important factors contributing to the severity of your skin disorder(s).

20 C.F.R. Pt. 404, Subpt. P., App. 1 (emphasis supplied).

Even if A.I.A.'s condition did not meet the listing, the SSA ignored substantial evidence that her impairment was "at least of equal medical

16

significance." *See* 20 C.F.R. § 416.926.


Therefore, by separate order, the decision denying benefits will be **REVERSED** and the appropriate relief will be granted.


DONE this 30th day of December 2008.

_____
U.W. Clemon
United States District Judge

17